## 5925. ROUGHLIN v. THE STATE.

1. An allegation in an indictment that an act which of itself is intrinsically lawful was done unlawfully, unless by explanatory statements it is specifically pointed out in what manner the act was done unlawfully, is not a statement of fact, but a mere conclusion of the pleader, and violates the general principle that merely to characterize as unlawful an act which may lawfully be committed does not suffice to inform the accused of the nature of the alleged offense so as to enable him to prepare for trial.

2. When the accused can with safety admit the acts alleged in an indictment against him, the indictment is demurrable.

3. One charged with the offense of involuntary manslaughter in the commission of a lawful act, by negligently permitting the administration of chloroform by an assistant not qualified to administer it, is entitled to know the name of the person who is referred to as having actually administered the chloroform, so as to enable him to properly prepare for trial.

DECIDED SEPTEMBER 24, 1915.

Indictment for involuntary manslaughter; from Fulton superior court—Judge B. H. Hill. July 6, 1914.

*Felder & Coburn, J. Mallory Hunt, V. A. Batchelor,* for plaintiff in error.

*Hugh M. Dorsey,* solicitor-general, *E. A. Stephens,* contra.

RUSSELL, C. J. Exception is taken in this case to a judgment overruling a demurrer to an indictment charging the offense of involuntary manslaughter in the commission of a lawful act. The presentment charges that L. C. Roughlin did, "without any intention to do so, but while engaged in a lawful act which might probably produce such a consequence in an unlawful manner, unlawfully kill one Hugh E. Murray Jr.; the lawful act in which L. C. Roughlin was engaged was that of circumcising said Hugh E. Murray Jr., and administering chloroform to said Hugh E. Murray Jr., and in having said chloroform administered to said Hugh E. Murray Jr. by one who was neither a physician nor a trained nurse; and the killing of said Hugh E. Murray Jr., under the circumstances above set forth, was contrary to the laws of said State," etc. The insistence of the plaintiff in error includes the following contentions: that the accusation is not stated in language sufficiently explicit to put the defendant on notice of what he is charged with and the manner and form of the alleged crime; that no unlawful act is pleaded, and it is not alleged what constitutes the unlawful act or acts charged; that there is no law or statute prohibiting one who is not a physician nor a trained nurse from administering chloroform, and the indictment does not allege any facts, nor the acts done in an unlawful manner which might produce such a consequence as death. It was further insisted in the demurrer that the particular act which was done in manner and form unlawful is not set out; and that the name of the person who administered the chloroform is not stated in the accusation.

We have had frequent occasion to rule that section 954 of the

Penal Code was not designed to deny to one accused of crime the right to know enough of the particulars of the occurrence in which he is charged to have participated, or of the act he is charged to have committed and which is alleged to constitute the offense against the laws of the State, to be able to prepare for trial, and that it was not the intention of the General Assembly, in the passage of the statute embodied in that code section, to dispense with the substance of good pleading. To adopt the opinion of Judge Nisbet in *Locke* v. *State,* 3 *Ga.* 534, an indictment, or other criminal accusation is generally sufficient when the offense is "so plainly stated that the juryman may easily understand its nature." If this result is reached, all the requirements of the most technical rules of pleading are complied with. If, however, the nature and circumstances of the charge can not be easily understood, a criminal accusation may be defective even though it be stated in the precise language of the statute. As pointed out in *Soell* v. *State,* 4 *Ga. App.* 337 (61 S. E. 514), there are exceptions to the general rule under which an indictment is sufficient if stated in the language of the code. And in *Burkes* v. *State,* 7 *Ga. App.* 39, 42 (65 S. E. 1091), this court held that where the definition of the offense includes generic terms, it is not sufficient that the indictment shall charge the offense in the same terms as in the definition. Likewise, in *Youmans* v. *State,* 7 *Ga. App.* 101 (66 S. E. 383), we held that "it has come to be a fixed rule that where a crime can be committed in more ways than one, the defendant must be informed of the manner in which he is charged to have committed the offense named," and that "all the material facts and circumstances embraced in the definition of the statutory offense must be stated, or the indictment will be defective; and no essential element of the crime can be omitted."

Bearing these rulings in mind, we come to consider whether the presentment in this case was sufficient to withstand the demurrer. Section 67 of the Penal Code provides: "Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence, in an unlawful manner: provided, that where such involuntary killing shall happen in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human

being, or is committed in the prosecution of a riotous intent, or of a crime punishable by death or confinement in the penitentiary, the offense shall be deemed and adjudged to be murder." The offense of involuntary manslaughter, therefore, has two branches, —the one where the involuntary slayer is engaged in the commission of an unlawful act (in which event, if the killing results from an unlawful act which naturally tends to destroy the life of a human creature or is committed in pursuance of a riotous intent, etc., the offense is murder), and involuntary manslaughter in the commission of a lawful act,—which is sometimes designated as "involuntary manslaughter in the commission of a lawful act without due caution and circumspection." It is apparent from the reading of the indictment that the offense charged in the present case is the killing of a human being without any intention to do so, in the commission of a lawful act which might probably produce such a consequence, in an unlawful manner. The essential elements of the offense of involuntary manslaughter in the commission of a lawful act, which must be charged and proved, are: (1) the killing of a human being, (2) without any intention to do so, (3) in the commission of a lawful act, (4) which might probably produce death, and (5) in a manner not justified by law. In the presentment sub judice a named human being is alleged to have been killed; it is stated that the accused had no intention of killing him; that the defendant was engaged in acts which were lawful (the circumcision, and, in connection therewith, the administration of chloroform to the deceased), and that the act of administering the chloroform to the deceased while performing the surgical operation, while in itself lawful, was one which might probably produce death in an unlawful manner. It is very plain that the presentment charges that the administration of chloroform by one who is neither a physician nor a trained nurse, at least in the particular case, was an unlawful manner of administering chloroform.

In our opinion the presentment does not constitute a good accusation, because the allegations are insufficient to inform the accused of the circumstances of the transaction in which he is alleged to have violated the law, so as to enable him to prepare his defense, and the defendant might admit the statements of fact contained therein, without subjecting himself to any criminal

liability. The accusation really contains only a conclusion of the pleader that the alleged killing was unlawful, which is dependent upon the statement that the accused killed Hugh E. Murray Jr. without any intention to do so and while engaged in a lawful act, which probably might produce such a consequence, in an unlawful manner, because of the fact, as alleged, that the defendant had "said chloroform administered by one who was neither a physician nor a trained nurse." The presentment is defective, under the rule stated in *Dukes* v. *State,* 9 *Ga. App.* 537 (71 S. E. 921), because the charge that an act intrinsically lawful was done unlawfully, without more, is not a statement of fact, but a mere conclusion of the pleader. Even where the nature of the offense may be easily understood by the jury, the mere characterization of an act as unlawful, when it is an act which may be lawfully committed, does not suffice to accuse one of crime; nor does the statement that a particular act was done in an unlawful manner expose the accused to the penalties of the law unless the law has expressly declared that the particular act shall not be performed in the specific way in which it is alleged that the accused performed it. The gist of the offense of involuntary manslaughter in the commission of a lawful act consists in the unlawful manner in which the act is done. In other words, if the act charged was not done in an unlawful manner, no offense was committed. The trial judge must, from the allegations of an indictment charging involuntary manslaughter in the commission of a lawful act, determine as a matter of law whether the manner in which the alleged lawful act is alleged to have been committed has been inhibited by law or involves an act penalized by statute. In *Burkes* v. *State,* supra, Chief Judge Hill, speaking for the court, said: "It is an elementary principle of criminal pleading that where the definition of a criminal offense, whether it be at common law or by a statute, includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition, but it must state the species; it must descend to particulars." The language employed in the statute under consideration, "an unlawful manner," is generic. It was therefore necessary that the indictment should state the specific acts in which consisted the unlawfulness of the manner in which the death was produced,—give the particulars and set forth what act or acts were

designated as unlawful. Not to do this makes the mere allegation that the act was unlawful a conclusion of the pleader. *Dukes v. State,* supra. There was, therefore, a failure to allege one of the essential elements of the crime, without which no crime was alleged. *Soell* v. *State,* supra; *Dean* v. *State, 9 Ga. App.* 303 (71 S. E. 597); *Youmans* v. *State,* supra; *Dukes* v. *State,* supra; *Bulloch* v. *State, 10 Ga. 47 (54 Am. D. 369); Hoyt* v. *State,* 50 *Ga. 313; O'Brien* v. *State, 109 Ga.* 51 (35 S. E. 112); *Herring* v. *State,* 114 *Ga.* 96 (39 S. E. 866); *Lipham* v. *State, 125 Ga.* 52 (53 S. E. 817, 114 Am. St. R. 181, 5 Ann. Cas. 66). There is no law of this State declaring the administration of chloroform by one who is neither a physician nor a trained nurse to be unlawful. Consequently, all that is stated upon that subject in the presentment is a mere conclusion of the pleader.

2. The case seems to fall under the test laid down as to the sufficiency of an indictment in *Dukes* v. *State,* supra, resulting from the answer to the question, "Can the defendant admit the charge as made and still be innocent?" There being no law prohibiting one who is neither a physician nor a trained nurse from administering chloroform, and, according to all the other allegations of the presentment, all of the acts done by the defendant being lawful acts, we think the accused could, without peril to himself, have admitted everything alleged therein.

3. Under our ruling, the presentment was generally demurrable, but we think the special demurrer based upon the ground that the defendant was entitled to know whom he was charged with having employed or secured to actually administer the chloroform was also good and should have been sustained. The court therefore erred in overruling the special demurrer. Even if the defects which we have pointed out in the first division of this opinion were corrected in a new accusation, and the defendant specifically informed as to the facts by reason of which his administration of the chloroform in the particular manner set forth and under the circumstances detailed was unlawful, he would still be entitled to be informed as to the identity of the person whom he was alleged to have procured or caused to administer the chloroform. To leave the defendant in the dark as to the identity of this undisclosed individual might be to face him with a witness whose testimony he was wholly unable to meet and whose credibility he was

not prepared to impeach. A stranger whom he had never met or heard of might be named as the one by whom he had the chloroform administered to the deceased, and even if the witness as to the testimony on this point was impeachable, it might be too late to procure testimony to that effect. Beyond all this, the rules to which we have referred in discussing the sufficiency of the charge as to "the unlawful manner" in which the alleged act was committed would be violated. Presuming that the defendant did the acts alleged, it might be assumed that he already knows whom he had to administer the chloroform; but the defendant's plea of not guilty puts in issue every material allegation in the accusation against him, and since the innocence of one accused of crime must always be presumed, it can not be assumed that the defendant knows who administered the chloroform or that any chloroform was in fact administered at all. One accused of crime has the right, if he demands it by timely demurrer, to have an accusation perfect both in form and substance. It is true that an indictment perfect in substance in Georgia meets every requirement as to form,—with the result that the terms "form" and "substance," as used in the dictum of Chief Justice Bleckley which we have adopted, anomalously become synonymous only when the averments of a criminal accusation are perspicuous and so perfect in substance that "he who runs may read and he who reads may understand."

For the reasons stated, the judgment of the lower court is reversed. *Judgment reversed. Broyles, J., not presiding.*